```
1

2                    UNITED STATES DISTRICT COURT

3                       DISTRICT OF ARIZONA

4   United States of America,      )
                                   )
5               Plaintiff,         )   CR 17-198-JAS(DTF)
                                   )
6          vs.                     )
                                   )   Tucson, Arizona
7   Ali Mukhtar Osman,             )   January 16, 2019
                                   )
8               Defendant.         )
    _____

9

10                    TRANSCRIPT OF PROCEEDINGS

11                      SENTENCING HEARING

12

13

14

15            BEFORE THE HONORABLE JAMES A. SOTO
                UNITED STATES DISTRICT JUDGE
16                 405 W. CONGRESS STREET
                  TUCSON, ARIZONA 85701

17

18

19

20          Cindy J. Shearman, RDR, CRR, CRC
            405 W. Congress Street, Suite 1500
21                  Tucson, AZ 85701
                     520-205-4286
22

23      Proceedings Reported by Realtime Court Reporter
        Transcript prepared by computer-aided transcription
24

25
```

1                        A P P E A R A N C E S

2

For the Plaintiff:
3

Jesse Figueroa
4    Assistant U.S. Attorney
     405 W. Congress Street, Suite 4800
5    Tucson, Arizona 85701

6

For the Defendant:
7

Erin Carrillo
8    Carrillo Law Firm, PLLC
     23 N. Stewart Avenue
9    Tucson, Arizona 85716-5221

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S

 2            (Call to order of court.)

 3            THE COURT:  Okay.  Let's go on the record in case

 4   number 17-cr-198, United States of America versus Ali Mukhtar

 5   Osman.  This case is on my calendar this morning for a

 6   sentencing hearing.  Let's get appearances on the record, and

 7   we'll start with the government.

 8            MR. FIGUEROA:  Good morning, Your Honor.  Jesse

 9   Figueroa appearing for the United States.

10            THE COURT:  Good morning, Mr. Figueroa.

11            MS. CARRILLO:  Good morning, Your Honor.  Erin

12   Carrillo for Ali Osman.  He is present in custody seated to my

13   left right now, Your Honor.

14            THE COURT:  Good morning, Ms. Carrillo.  I'm going to

15   let you remain at counsel table.  I assume your client wants to

16   remain seated?

17            MS. CARRILLO:  Would you like to remain seated, Ali?

18            THE DEFENDANT:  Yes.

19            MS. CARRILLO:  Yes, please, Your Honor.  Thank you.

20            THE COURT:  Okay.  Let's get the appearance of the

21   probation department on the record.

22            PROBATION:  Good morning, Your Honor.  Tom Nazzaro on

23   behalf of the probation department.

24            THE COURT:  Good morning, Mr. Nazzaro.

25       Ms. Carrillo, did you have an opportunity to review the
```

1    presentence report with your client?

2              MS. CARRILLO:  I reviewed the presentence report with

3    my client this morning just before -- while you were on recess,

4    Your Honor.  And --

5              THE COURT:  Do you need additional time to review the

6    presentence report with him?

7              MS. CARRILLO:  Mr. Osman is saying he does not need

8    any additional time to go over anything further in the

9    presentence report.

10             THE COURT:  Do you think your client understands the

11   contents of that report?

12             MS. CARRILLO:  I do, Your Honor.

13             THE COURT:  Okay.

14       Mr. Osman, your full name is Ali Mukhtar Osman; is that

15   correct?

16             THE DEFENDANT:  Yes, sir.

17             THE COURT:  And you are 30 years old?

18             THE DEFENDANT:  Three?

19             THE COURT:  Three-zero, 30?

20             THE DEFENDANT:  Yes, sir.

21             THE COURT:  Your date of birth is June 7th, 1988?

22             THE DEFENDANT:  Correct.

23             THE COURT:  Okay.  Let me put on the record that there

24   was a trial held in this case.  At that trial -- that trial was

25   held in October of 2018.  At the trial, at the conclusion of

1    the trial, the jury returned a verdict of guilty as to Count 3

2    of the second superseding indictment and that charge was

3    unlawful bringing in of a firearm or ammunition.  The jury

4    returned a verdict of not guilty as to Count 4 of the second

5    superseding indictment, which was a charge of possession of a

6    stolen firearm.

7         Following the jury's verdict -- we had bifurcated this

8    trial -- the government moved to dismiss Counts 1 and 2 of the

9    second superseding indictment.

10        I set the matter on my calendar for sentencing.  I have

11   reviewed the presentence report that's dated January the 8th of

12   2019, including the recommendations contained in that report.

13   Ms. Carrillo submitted letters on behalf of the defendant.

14   There are three letters that I've reviewed from either friends

15   or colleagues of the defendant.  I've reviewed those letters

16   also.

17        I did not see any objections to the proposed guideline

18   calculations.  The base offense level for the charge that the

19   defendant was convicted of is 14.  There's a two-level

20   enhancement that applies because the firearm was apparently

21   stolen.  There's also a -- that's it.  So the total offense

22   level is 16.  The defendant falls into criminal history

23   category I.  The resulting guideline range is 21 to 27 months.

24   Of course, there is no plea agreement, and I would note that

25   the defendant has served about twenty -- a little over

1   24 months in custody.

2       Okay.  Ms. Carrillo, let me hear from you first and then if

3   your client wants to address the court, I'll hear from him.  I

4   am especially interested in hearing about placement for your

5   client once he completes any prison sentence that I impose

6   either with a relative or a halfway house or some other

7   location.

8           MS. CARRILLO:  Okay.  Yes, Your Honor.  First off, if

9   I can just address a couple of the guideline calculations and

10  specifically any reduction under 3E1.1 for acceptance of

11  responsibility for this offense.  I recognize, Your Honor, that

12  Mr. Osman did not participate in the presentence investigation

13  interview.  However, under the facts of this case and the --

14  during the trial that we had in October in this case, Mr. Osman

15  -- and it's laid out in the presentence report but I think it

16  was more laid out obviously during the trial.

17      Mr. Osman, as soon as he was stopped at the port of entry

18  and was taken out of his car and asked if he had any weapons on

19  him, he immediately advised the agents that there was a gun

20  inside of his car.  Subsequent to that, he immediately -- and

21  it was used during his trial, he had an interview with agents

22  and he acknowledged bringing in a gun into the United States.

23  He has -- Mr. Osman has never, ever denied that.

24      In fact, during the trial, when he attempted to deliver his

25  opening statement prior to me taking over again as counsel,

1    during his opening statement, he admitted that he brought in a

2    gun into the United States.  That was one of the only things

3    that he was able to get out of his mouth before he sat down and

4    ended his opening statement.

5         So, for that reason, I'm asking that the court give him the

6    two points acceptance of responsibility and bringing the

7    adjusted level of offense down to 14 with a guideline range of

8    15 to 21 months.

9              THE COURT:  Okay.

10             MS. CARRILLO:  But I will go on now.

11             THE COURT:  All right.

12             MS. CARRILLO:  So, Your Honor, I'm asking that the

13   court today impose a sentence of time served with no supervised

14   release, and I know that this is an unusual request.  I know

15   that we were -- we were here back in April, I believe, of last

16   year with a time served offer and request for no -- and the

17   reason that Mr. Osman didn't accept that offer at that time was

18   because he was not accepting supervised release.  And the court

19   at that time indicated that the -- that you were going to

20   impose supervised release for 12 months at that time.

21   Obviously we are here because Mr. Osman rejected that offer and

22   we went to trial.

23        But the reason specifically that I'm accepting or asking

24   for no supervised release in this case is because this -- this

25   sentence of time served, terminal disposition, reflects the

1    seriousness of this offense, promotes the respect for the law,

2    provides just punishment for this offense, and it will serve

3    deterrence not only for Mr. Osman but for other defendants

4    which are the factors under 18-3553.

5         Mr. Osman, as you've noted, committed -- and I'm going to

6    go back to why he committed this offense.  He told the

7    officers, it was part of the trial testimony and testified at

8    trial at length that he brought the gun back into the United

9    States because he believed it was better than leaving a gun in

10   Mexico.  You will note, Mr. Osman does not have a history of

11   violence.  He does not have a history of any gun offenses.  He

12   has a very limited criminal history.  Mr. Osman perceived that

13   the risk in committing this offense was less than the risk of

14   leaving that gun in Mexico.  And that's been his -- that's been

15   why he -- his story since day one, from moment one.

16        Secondly, so I guess what I'm trying to say is that to the

17   extent that Mr. Osman now has a firearm conviction on his

18   record, I submit to the court, based on his prior conduct and

19   30 years of living with no -- he has no -- very little criminal

20   history, like I said, no violent offense, no gun offenses, so

21   this offense was somewhat aberrant for him, the conduct -- this

22   conduct is not likely to reoccur.  Therefore, there's no need

23   to impose a period of supervision for this conduct for this

24   person, Mr. Ali Osman.

25        Next, Mr. Osman has served two years in custody.  He has

```
 1    very, very limited resources, and I know this is what the
 2    court's interested in.  The court is interested in, well, you
 3    know, where -- if he is placed on supervision, where is he
 4    going to live?  And probably even if he's not placed on
 5    supervision, where is he going to live?
 6         THE COURT:  I share that concern whether he's on
 7    supervised release or not.
 8         MS. CARRILLO:  Exactly.  You know, Mr. Osman has
 9    family that don't live in Tucson.  He has a cousin that lives
10    in Phoenix.  He has -- his father lives in Missouri.  His
11    father does not speak English but I spoke with him on the
12    telephone with the assistance of one of Mr. Osman's other
13    family members last week.  His father, I know, wants him to
14    move back out to Missouri to be with him.  That was based on --
15    I say I know.  That was based on my communications with his
16    father, that's what I was advised.  He, Mr. Osman, has a sister
17    that lives in New York and another sister --
18         THE COURT:  Was she the sister that lived in Phoenix
19    before?
20         THE DEFENDANT:  No.
21         MS. CARRILLO:  No.  That's a different sister.
22         THE COURT:  Okay.
23         MS. CARRILLO:  And he has another cousin, excuse me,
24    that lives in North Carolina, I believe, it may be North
25    Dakota.  It's North Dakota.  I misspoke.
```

1    So given, I think, that for Mr. Osman under these

2    circumstances -- and I want to hit on this, too.  Mr. Osman, as

3    I said before, he's different.  He's not like all of us, but

4    he's a peaceful person.  He's been in custody for two years,

5    you know.  I know he has on record and we've talked about it,

6    and the court is well aware that he has some mental health

7    history.  In fact, he was committed to a mental health

8    institution back in 2012.  But since then, and since he's been

9    incarcerated, he's not on any medication, and nobody has found

10   that he needs medication to make him peaceful, to make him not

11   act out, to keep him in line.

12   He's somebody who is a very religious and spiritual

13   individual who I think he lives his faith and that faith is one

14   of peace, and I don't believe that Mr. Osman needs any

15   supervision.

16            THE COURT:  Okay.  Let's assume I do impose a term of

17   supervised release.  Let's get back to the placement issue.

18   You believe there are family members who are willing to take --

19   to let him reside with them?

20            MS. CARRILLO:  Yes.  I believe that to be the case,

21   Your Honor.

22            THE COURT:  Well, that just -- the equation, though,

23   is your client willing to live with those -- any of those

24   relatives?

25            MS. CARRILLO:  Let me -- may I --

1              THE COURT:  Sure.

2        (Discussion off the record between the defendant and

3    counsel.)

4              MS. CARRILLO:  Your Honor, may I let Mr. Osman address

5    the court with respect to that issue?

6              THE COURT:  Sure.  Well, are you through with your

7    remarks?

8              MS. CARRILLO:  I am, Your Honor.  But I would like for

9    Mr. Osman to address the court's last question.

10             THE COURT:  He's going get an opportunity to address

11   the court and talk to me about anything he wants, including

12   placement.

13       So, Mr. Osman, pull the microphone down closer to you.  I

14   want to make sure the court reporter can hear you.  I'm going

15   to be imposing sentence in a few minutes.  I'm especially

16   interested in placement for you once you are released from

17   custody and I'm curious as to whether or not you think there

18   are family members of yours where you could live, whether it's

19   in state or out of state.  So you can address me on that point

20   as well as anything else you want to tell me.

21             THE DEFENDANT:  Okay.

22             THE COURT:  Go ahead.

23             THE DEFENDANT:  Thank you.  Right now?

24             THE COURT:  Yes, sir.

25             THE DEFENDANT:  Okay.  Yes, there's actually quite a

1   few relatives that live out here Arizona, they're all scattered

2   out, some in Phoenix, some here, I mean, in Tucson.  I call

3   them, you know, relatives 'cause I've been knowing them for

4   quite long and they can -- I have no worries of having a place

5   to stay until I get a job or find something else for, you know,

6   I get back on my feet.  And other than that --

7           THE COURT:  Do you have names and addresses for these

8   people?

9           THE DEFENDANT:  I have phone numbers and names but

10  addresses for all, I mean, I don't know.  I forgot the address

11  numbers or I do have, you know, phone number of one, I have a

12  phone number of one.  Actually, there's quite a lot of them but

13  I can't -- I don't have their phone numbers, you know, I

14  just -- it's been a while.

15          THE COURT:  Have you talked to any of them about the

16  possibility of you living with them once you are released?

17          THE DEFENDANT:  I haven't but, I mean, they can get a

18  call, I mean, and actually I've been asked -- I talked to one

19  of them and he didn't have a problem with that either that

20  lives here in Tucson.

21          THE COURT:  Okay.  What else do you want to tell me

22  this morning?

23          THE DEFENDANT:  In regards of the probation, sir, I've

24  actually told her a long time ago, I mean, back, like she said,

25  in April when you actually said that you were going to give me

1   a time served and probation, and the main purpose why I'm

2   refusing the probation is not because of anything else, it's

3   just because of in regards of my faith.  It requires a lot of

4   thing that contradict with my religion.

5         THE COURT:  Tell me what it requires that contradicts

6   with your religion.

7         THE DEFENDANT:  It is -- well, one of the things is

8   that doing, you know, you know, how do you call, taking, you

9   know, DNA samples and all those stuff which is not allowed in

10   my faith.

11         THE COURT:  Okay.  What else?

12         THE DEFENDANT:  And also giving, you know,

13   information, so of one's secrets whatever, you know, like I

14   mean, it depends.  It is a lot of things 'cause when I was

15   looking at it, there was a lot that I went through and I looked

16   at it of what the supervision actually states on and some of

17   them in Islam, it's not actually allowed.  I mean, it is based

18   on, you know, financial, you know, stuffs and all that, you

19   know.  It was quite a lot of things that made me just look at

20   it and say, no, I'm not going in this route.  And, at the same

21   time, it's that I cannot predict the future.  I cannot, you

22   know, accept something that I can't, you know, promise to hold

23   on to it, you know.

24         THE COURT:  All right.  Tell me what your -- what is

25   your religious faith, what is it?  Muslim?

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  Okay.  I have to assume that there are

3   Muslims in the United States who have committed crimes who have

4   either been placed on probation or who were placed on

5   supervised release after a term of incarceration.  Are you

6   aware of any other cases where the Muslim faith has been used

7   as an argument that they can't be placed on probation or they

8   can't be placed on supervised release?

9          THE DEFENDANT:  I mean, you're quite right on that

10  because there's millions of Muslims that live in the United

11  States but, at the same time, is that the same as millions of

12  Christians that live in America.  That does not mean that, you

13  know, they -- they -- most of them do not go by what the book

14  teach, you know.  They just -- they do not know -- if they

15  don't know anything about their faith, then anyone can take

16  advantage of them and impose on them anything that they want.

17     So as far as the concerns to me, that I understand, you

18  know, on how to live around people and how to socialize and

19  everything and if I violate any law or anything according to

20  that state that I'm at, I will be held accountable for that and

21  I will be responsible for that.  But as in to anything else, I

22  am required to peacefully -- live peaceful with anyone around

23  me and not to break any laws according to whatever that

24  situation is.

25          THE COURT:  All right.  Can you show me today as you

1    sit there something either in the Koran or some other religious

2    book or document that says that the conditions that are being

3    recommended violate your faith?

4              THE DEFENDANT:  I mean, it's throughout the Koran.  I

5    mean, it's not just only one place or two.  But, as far as I

6    understand it, there is a verse in the Koran that says that,

7    you know --

8              THE COURT:  Can you show it to me today?

9              THE DEFENDANT:  The part, the verse where the Koran

10   says it?

11             THE COURT:  Yes.

12             THE DEFENDANT:  I mean, I don't have the English

13   translation, I left it, but I do have the verse, yes.

14             THE COURT:  Okay.  Anything else you want to tell me,

15   Mr. Osman?

16             THE DEFENDANT:  Nothing else, sir.  Thank you very

17   much.

18             THE COURT:  Okay.  Mr. Figueroa, what is the

19   government's position?

20             MR. FIGUEROA:  Yes, Your Honor.  I'd submit he's not

21   entitled to reduction for acceptance of responsibility.  For

22   one thing, he went to trial on this and, for another thing, he

23   did not, in fact, cooperate with the authorities at the

24   earliest opportunity.  He did not declare that he had a firearm

25   when he was first questioned by the first agent and also the

1   story that he gave to the jury is not supported by the facts.

2   He told us, he told the jury that he just came into possession

3   of that gun on one occasion.  But that was proven to be false

4   because a round that was capable of being fired by that gun was

5   found in the back area of the vehicle which indicates that he

6   had a more than passing contact with that gun.

7       Also, Your Honor, if there is anyone that needs supervised

8   release, I'd submit it's this gentleman.  He alleges that there

9   are family members who are willing to take custody of him to

10  give him a place to stay but where are they?  He has not

11  provided us with any names or phone numbers and they have to be

12  contacted, probation officer has to contact them and verify

13  that they are, in fact, a suitable place for him.  And that

14  they, in fact, want him.  I can tell you that, from reading the

15  presentence report, I can probably guarantee the court that the

16  one sister he threatened does not want him.

17      Insofar as him not having a history of violence, paragraphs

18  26 and 27 of the presentence report show that he has had some

19  -- some violent -- violent contacts in his life.  Paragraph 26

20  shows that on April 9th, 2012, he was arrested for disorderly

21  conduct.  That was dismissed, but still, that shows some

22  violence on his part.  On November 16th, 2012, as shown by

23  paragraph 27, he was arrested for a criminal damage charge.  It

24  was dismissed, but that was the incident that arose with his

25  sister.

1    I was prepared, Your Honor, to inform the court that I've

2  got no objection to a time-served sentence with the supervised

3  release.  But if he is now telling the court that he won't

4  comply with supervised release, I think we have to rethink

5  that.  Society deserves to be protected and the best way is for

6  us to have some type of a control on this individual so, Your

7  Honor, I'd request that the court adopt the recommendation of

8  the probation office and sentence him to a period of supervised

9  release.  If he is stating that he will not -- he will not, in

10  fact, follow that, then perhaps he should be sentenced to more

11  time.  Thank you.

12        THE COURT:  All right.  Counsel, is there any legal

13  cause why I should not proceed with sentencing at this time?

14        MS. CARRILLO:  Can you give me one second, Your Honor?

15        THE COURT:  Sure.

16    (Discussion off the record between the defendant and

17  counsel.)

18        MS. CARRILLO:  No, Your Honor.

19        THE COURT:  Mr. Nazzaro, to the best of your

20  knowledge, you have not found a location for placement of the

21  defendant once he's released; is that correct?

22        PROBATION:  That's correct, sir.

23        THE COURT:  And that would be either with a family

24  member or -- and, unfortunately, my guess through budgetary

25  issues that the placement at a residential reentry center is

1   not available right now or any of the other programs; am I

2   correct?

3         PROBATION:  Correct, sir.

4         THE COURT:  All right.  If you think -- if it appears

5   or turns out that there are family members who are willing to

6   allow Mr. Osman to reside with them, I assume probation is

7   going to need some time to look into the suitability of that

8   placement?

9         PROBATION:  Yes, sir.  If it's in state, we'll have a

10   little bit more ease to explore that as an option but if it's

11   out of state, we'll need to reach out to that specific

12   district.

13         THE COURT:  Is 10 days sufficient time?

14         PROBATION:  I believe so.  That should be sufficient,

15   Your Honor.

16         THE COURT:  Okay.  Thank you, Mr. Nazzaro.

17      All right.  I did look at all the factors set out at 18 USC

18   3553(a) in arriving at my sentencing decision today.  When I

19   look at the nature and circumstances of the offense, it appears

20   that this defendant illegally brought in a firearm from Mexico.

21   He tried to give some explanation or justification as to why he

22   did that.  I don't find his statements to be credible or,

23   frankly, rational under all the facts and circumstances of this

24   case.

25      I did look at the defendant's criminal history.  He has no

1    felony convictions.  He does have one misdemeanor conviction

2    and he's had extensive contact with law enforcement officials

3    in the past.

4    I also find the defendant to have been uncooperative

5    throughout the proceedings, including his refusal to speak to

6    the presentence report writer so that the court could have all

7    the information available to it for purposes of imposing a just

8    and appropriate sentence.

9    Mr. Osman, I think you're a smart and articulate guy.  I

10    think you have a lot of ability.  But you like to do things

11    your way and you think your way is the only way to get things

12    done.  This is not an argument.  This is my chance to talk to

13    you, so I don't want -- I'm not going to need to hear from you

14    again.  I think you have the ability to be successful.

15    I am going to be imposing a time-served sentence, plus

16    10 days.  It's going to take about 10 days for probation to

17    contact either family members or other folks that you know to

18    find out where placement will be -- would be appropriate with

19    you in a way that's suitable for you but also suitable for the

20    public.

21    I am going to be placing you on supervised release for a

22    period of one year.  I think it's appropriate if you look -- if

23    the -- I think the record shows that this defendant has had

24    some mental health issues that go back a number of years.  It

25    was actually a basis for two of the charges in the second

1   superseding indictment.

2       I would also note the defendant also has a history of using

3   drugs.  According to his sister, he had used marijuana for

4   quite some time but he had begun using cocaine for the period

5   of time leading up to his commission of the crime.  So I do

6   think, based on his substance abuse issues and his mental

7   health issues, a term of supervised release is entirely

8   appropriate in this case.

9       With respect to the issue of the acceptance of

10  responsibility, I would note, number one, no objection to the

11  calculations proposed in the presentence report was filed by

12  the defense but, secondly, even if one had been filed, I think

13  the record is clear that this defendant has not accepted

14  responsibility.  So to the extent that that's an objection, I'm

15  going to overrule the objection.

16      The presentence report has some special conditions for

17  supervised release that I think are appropriate based upon the

18  particulars of this defendant.  I am going to reduce the

19  supervised release term from 36 -- the recommendation of

20  36 months to 12 months.

21      Which is probably what I told you I was going to do a year

22  or a year and a half ago, Mr. Osman.  Your stubbornness, if you

23  will, is what's caused you to serve another year to another

24  year and a half in custody and you've got nobody to blame for

25  that but yourself.

1        It will be the judgment of the court today that the

2    defendant be sentenced to a term of incarceration of time

3    served plus 10 days.  I believe that should be 741 days in

4    custody, and he's got 731 days in custody so far.

5        I'm not going to assess a fine in this case.  The defendant

6    has no assets or income.

7        Mr. Figueroa, I'm inclined to remit the special assessment.

8    Any objection by the government?

9            MR. FIGUEROA:  None, Your Honor.

10           THE COURT:  On motion of the government, I am going to

11   remit the special assessment of $100 for the same reason that

12   I'm not imposing a fine and in view of the fact that the

13   defendant is going to be in custody for 10 more days.

14       Just so we're clear, I'm imposing the additional 10 days to

15   allow -- because of my concern not only for the defendant but

16   for public safety to allow the probation department to research

17   and look into the issues of placement for the defendant while

18   he's on supervised release.

19       He will be on supervised release for a period of 12 months.

20   While he is on supervised release, he will be subject to all of

21   the mandatory and standard conditions of supervision that this

22   district has adopted in its General Order No. 17-18.

23       He's going to be subject to special conditions as follows:

24   He's going to -- because of his documented history of using

25   drugs in the past, he's going to be subject to searches of both

1    his person and his property by his assigned probation officer.

2        Your failure to submit to those searches, Mr. Osman, could

3    be grounds for revoking your supervised release.

4        The defendant is going to be required to be assessed for

5    substance abuse issues and if the assessment indicates that

6    either counseling or treatment is indicated, the defendant will

7    be required, while he's on supervised release, to successfully

8    complete any recommended substance abuse counseling or

9    treatment program.

10       In connection with that, the defendant will be prohibited

11   from consuming or using alcohol or alcoholic beverages.

12       I assume that's not an issue for you based upon your faith,

13   Mr. Osman; is that correct?

14           THE DEFENDANT:  Yes, sir.  But like I've said, I'm not

15   willing to accept any probation services.

16           THE COURT:  I understand that.  And if you don't

17   comply, then a petition to revoke -- and I'll talk to you about

18   that in a minute about what's going to happen.

19           THE DEFENDANT:  Thank you.

20           THE COURT:  That's going to be your decision to make.

21   I'm going to order it and then it's up to you.

22       The defendant will be prohibited from consuming,

23   possessing, or using alcohol or alcoholic beverages.  He's also

24   going to be prohibited from using any illicit drugs.  He's

25   going to be subject to testing for both alcohol and drugs while

1    he's on supervised release.  If he does not submit to that

2    testing, that could be grounds for revoking his supervised

3    release.

4        I'm also going to order the defendant to participate in a

5    mental health assessment.  If that assessment indicates that

6    counseling or treatment is indicated, the defendant will be

7    required to successfully complete any recommended program.

8        The defendant may be required to take medication if it is

9    prescribed by a licensed physician to address any mental health

10   issues.

11       With respect to a residential reentry center, it does not

12   appear that that is an option available to the court,

13   unfortunately, based upon budgetary purposes.  So what I'm

14   going to do is order the probation department to contact the

15   names and phone numbers provided by the defendant or defense

16   counsel to find out -- to find a place that is suitable for

17   placement of the defendant and he'll be required to remain

18   there under the supervision of his assigned probation officer.

19   He will be allowed -- he'll have to have a stable residence

20   while he's on supervised release.

21       I think I dismissed the other counts, Mr. Figueroa, at

22   trial but just so the record's clear, I believe it's Counts 1

23   and 2 are dismissed on motion of the government.

24           MR. FIGUEROA:  That's correct.

25           THE COURT:  All right.  Mr. Osman, you have the right

1    to appeal my sentencing decision today.  If you wish to appeal

2    my decision, you'll need to file a written notice of appeal

3    with this court within 14 days of today's date or you'll lose

4    the right to appeal.

5        You have the right to have an attorney represent you and

6    assist you in pursuing your appeal.  You also have the right to

7    the entire record in this case to assist you in pursuing your

8    appeal.  If you cannot afford to hire an attorney or pay for

9    the record in this case, that will be provided for you by the

10   court at no expense to you.

11       Do you have any questions about any of the terms of my

12   sentence?

13           THE DEFENDANT:  No, sir.  But the only thing that I

14   would accept is if you grant me for deportation.

15           THE COURT:  You're a US citizen as I understand it so

16   I'm not going to be deporting you.  That does not prevent

17   you --

18           THE DEFENDANT:  I mean, I --

19           THE COURT:  -- that does not prevent you from

20   voluntarily leaving the country as a US citizen but I don't

21   have -- number one, I don't have -- I believe you're a US

22   citizen; number two, I don't have the authority to deport you.

23       So I want to caution you, I put you on supervised release.

24   You were convicted of a class D felony.  If you don't comply

25   with your conditions, a petition to revoke your supervised

1   release could be filed with the court and if I find that you

2   violated your conditions of supervised release, I could revoke

3   that supervised release and I could potentially add up to two

4   more years to your prison sentence in this case for violating

5   your supervised release.

6       Supervised release is not designed to punish you further,

7   Mr. Osman, it's designed to make sure that the public is

8   protected and it's also designed to provide services to you so

9   that you can be more successful.  And I think if you think of

10  it that way, you'll be more successful.  Otherwise, you're

11  going to end up back in custody.  It's that simple.

12          THE DEFENDANT:  I'll be more than happy to remain in

13  custody.

14          THE COURT:  Well, you're not going to be in custody --

15  you're going to be in custody for 10 more days and then we'll

16  see how you do after that.

17          THE DEFENDANT:  I would rather do the other -- that

18  year of supervised release in custody, please.

19          THE COURT:  All right.  Ms. Carrillo, anything else?

20          MS. CARRILLO:  No, not at this time, Your Honor, but

21  may I just ask that I have a couple of minutes with the

22  defendant?

23          THE COURT:  Sure.  And I'm going to authorize you to

24  continue your representation of Mr. Osman and communicate as

25  necessary with the probation department so we can hopefully --

1    so that the probation department can hopefully make contact

2    with either family members or other individuals who are willing

3    to allow the defendant to reside with them.

4        All right.  Mr. Figueroa, anything else?

5            MR. FIGUEROA:  Nothing, Your Honor.  Can I be excused?

6            THE COURT:  Mr. Nazzaro, anything else?

7            PROBATION:  Your Honor, I just wanted to find out, did

8    you leave the RRC condition as an option for supervision?

9    Because I know they had indicated that if something does become

10   available, they will submit a referral but it's just a matter

11   of when it will become available.

12           THE COURT:  Well, if there's no other placement that's

13   available through family members and the RRC becomes available,

14   then file something with the court and I'll address the issue

15   at that time.

16           PROBATION:  Okay.  Thank you, sir.

17           THE COURT:  All right.  If there's nothing -- oh, I'm

18   sorry.  There's another -- it's actually -- I thought it was a

19   standard condition but I know it's always in the

20   recommendations.  I'm also going to require the defendant to

21   cooperate in the collection of a DNA sample as directed by his

22   assigned probation officer.

23       All right.  The defendant is remanded and we are at recess.

24   Thank you, everybody.

25           MS. CARRILLO:  Your Honor, I have one other quick

1    question.

2              THE COURT:  Sure.

3              MS. CARRILLO:  With respect to the 10 days, is that --

4    is Mr. Osman going to be transported back to Florence and

5    released from Florence or is that --

6              THE COURT:  Yes, the short answer is yes.  And,

7    hopefully, there will be a proper -- we'll find a place for him

8    to reside with relatives in that 10-day period.

9              MS. CARRILLO:  Okay.  Very well.  I will be in touch

10   with probation.

11             THE COURT:  All right.  We are at recess.  Thank you,

12   everybody.

13             MR. FIGUEROA:  Thank you.

14         (Whereupon, the matter was concluded.)

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T E

2

3           I certify that the foregoing is a correct transcript

4    from the record of proceedings in the above-entitled matter.

5

6     __/s Cindy J. Shearman_____          February 21, 2019
      CINDY J. SHEARMAN, RDR, CRR                DATE

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25